UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

_____
                                        )
UNITED STATES OF AMERICA and            )
STATE OF TENNESSEE,                     )
                                        )
         Plaintiffs,                    )
                                        )    Civil Action No. 1:16-cv-103
         v.                             )
                                        )
OXY USA INC.,                           )
                                        )
         Defendant.                     )
_____)

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Tennessee, by the authority of the Attorney General of the State of Tennessee, acting at the request of the Tennessee Department of Environment and Conservation (generally the "State"), through the undersigned attorneys, file this Complaint and allege as follows:

## NATURE OF THE ACTION

1. This is a civil action against OXY USA Inc. ("Defendant") for injunctive relief and recovery of costs pursuant to Sections 106 and 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9606 and 9607(a). The State also brings this action against Defendant for injunctive relief pursuant to the Tennessee Hazardous Waste Management Act of 1983 ("HWMA 1983"), Tenn. Code Ann. §§ 68-212-206 and 68-212-227.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and the parties hereto, pursuant to 28 U.S.C. §§ 1331, 1345, and 1367, and 42 U.S.C. §§ 9606(a), 9607(a), and 9613(b).

3. Venue is proper in this district pursuant to 42 U.S.C. §§ 9606(a) and 9613(b) and 28 U.S.C. § 1391(b) and (c), because the Site is primarily located, the claims arose, and the threatened and actual releases of hazardous substances that gave rise to these claims occurred, within this judicial district.

## DEFENDANT

4. Defendant is a Delaware corporation and a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and Tenn. Code Ann. § 68-212-202(b) of HWMA 1983 (incorporating definition from Tenn. Code. Ann. § 68-212-104(14)).

## GENERAL ALLEGATIONS

5. The Site consists of 14,000 acres in southeastern Polk County, Tennessee.

6. Cities Service Company owned and operated the Site from 1963 until 1982. During that period, the Site was used for the production of sulfuric acid, mineral processing, smelting, and copper and iron mining.

7. During Cities Service Company's ownership and operation of the Site, industrial and mining waste products, including granulated slag, pot slag, high-sulfur and low-sulfur iron calcine, sulfide mineral concentrate, and demolition debris, were disposed of on premises. These by-products contained hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and 40 C.F.R. § 302.4, App. A, including lead, copper, cadmium, aluminum, and zinc.

8. Cities Service Company owned and/or operated the Site at the time of disposal of hazardous substances within the meaning of Sections 101(20) and 107(a)(2) of CERCLA, 42 U.S.C. §§ 9601(20) and 9607(a)(2) , and is a "liable party" within the meaning of Tenn. Code Ann. § 68-212-202(a)(4) of HWMA 1983.

9. On December 3, 1982, Cities Service Company merged with Occidental Merger Company, then a subsidiary of Occidental Petroleum Company. Cities Service Company was the surviving entity.

10. On September 7, 1983, Cities Service Company paid all of its assets to Cities Service Holding Company. Under an Assumption Agreement, dated September 7, 1983, Cities Service Holding Company assumed all the liabilities of Cities Service Company for itself, its successors and assigns.

11. On September 8, 1983, Cities Service Holding Company changed its name to Cities Services Company ("New Cities").

12. On April 1, 1988, New Cities changed its name to Oxy Oil & Gas USA Inc. Cities Service Oil & Gas, which was owned by New Cities, changed its name to OXY USA Inc.

13. On December 31, 1988, Oxy Oil & Gas USA Inc. merged with OXY USA Inc. with OXY USA Inc. as the surviving entity.

14. OXY USA Inc. is a successor to the liabilities of Cities Service Company and New Cities.

15. EPA has divided the Site into five Operable Units for remediation and cleanup purposes. Operable Unit 3 consists of the Davis Mill Creek Collection and Treatment System, which discharges directly into the Ocoee River. Operable Unit 5 consists of 26 miles of the Ocoee River, including four dams operated by the Tennessee Valley Authority ("TVA").

16. The Site, Operable Unit 3, and Operable Unit 5 are each facilities within the meaning of Section § 101(9) of CERCLA, 42 U.S.C. § 9601(9), as well as hazardous substance sites within the meaning of Tenn. Code Ann. § 68-212-202(a)(3) of HWMA 1983.

17. On June 28, 2002, EPA commenced a Remedial Investigation and Feasibility Study ("RI/FS") for Operable Unit 3, pursuant to 40 C.F.R. § 300.430. Defendant completed a Remedial Investigation Report in April 2012 and a Feasibility Study in June 2012.

18. On September 26, 2012, EPA issued a Record of Decision ("ROD") selecting the remedial action for Operable Unit 3. The selected remedy includes collection and treatment of contaminated water in Davis Mill creek through operation and maintenance of a collection and conveyance system and water treatment plant.

19. On December 18, 2002, EPA commenced an RI/FS for Operable Unit 5 pursuant to 40 C.F.R. § 300.430. EPA completed a Remedial Investigation Report for Operable Unit 5 on May 20, 2008, and a Final Feasibility Study on April 29, 2011.

20. On September 28, 2011, EPA issued a ROD selecting the remedial action for Operable Unit 5. The selected remedy includes monitored natural attenuation and modified functioning of TVA dams to maintain minimum water levels.

21. The remedies selected for Operable Units 3 and 5 are consistent with CERCLA and the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

22. Lead, copper, cadmium, aluminum, zinc, and manganese have come to be located at the Site, including Operable Unit 3 and Operable Unit 5.

23. There has been a "release" or "threatened release" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), of hazardous substances into the environment,

including Davis Mill Creek and the Ocoee River, at or from Operable Unit 3, Operable Unit 5, and the Site.

24. EPA has incurred at least $10,770,509.33 in unreimbursed response costs, not inconsistent with the NCP, in responding to releases or threatened releases of hazardous substances at or from the Site, including Operable Units 3 and 5.

25. The State has also incurred response costs in responding to releases or threatened releases of hazardous substances at or from the Site, including Operable Units 3 and 5.

26. The United States and the State will continue to incur response costs in connection with remediation activities undertaken at Operable Units 3 and 5.

**FIRST CLAIM FOR RELIEF**
**(Injunctive Relief for Operable Unit 3)**

27. Paragraphs 1 through 26 are realleged and incorporated herein by reference.

28. Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides, in pertinent part, that:

> [W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat . . . .

29. By Executive Order 12,580 of January 23, 1987, the President's functions under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), have been delegated to the Administrator of EPA.

30. The Administrator of EPA has re-delegated this authority to the Regional Administrators of EPA.

31. EPA has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of actual and threatened releases of hazardous substances into the environment at or from Operable Unit 3.

5

32. Tenn. Code. Ann. § 68-212-206(c) of HWMA 1983 provides, in pertinent part, that:

> If, at any time, the commissioner, after investigation, finds that an inactive hazardous substance site constitutes an imminent, substantial danger to the public health, safety or environment, the commissioner may undertake such actions as are necessary to abate the imminent and substantial danger….

33. Tenn. Code Ann. § 68-212-227 provides, in pertinent part, that:

> [T]he commissioner may cause the enforcement of any orders, rules or regulations issued by the commission or the board to carry out this part by instituting legal proceedings to enjoin the actual or threatened violations this part, and the orders, rules, or regulations of the commissioner, or orders of the board in the chancery court . . . .

34. Pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a) and Tenn. Code Ann. §§ 68-212-206(c) and 68-212-227 of HWMA 1983, Defendant is liable to the United States and the State for injunctive relief to abate and remedy conditions at Operable Unit 3 that may present an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of hazardous substances at or from Operable Unit 3.

## SECOND CLAIM FOR RELIEF
**(Injunctive Relief for Operable Unit 5)**

35. Paragraphs 1 through 26, 28 through 30, and 32 and 33 are realleged and incorporated herein by reference.

36. EPA has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of actual and threatened releases of hazardous substances into the environment at or from Operable Unit 5.

37. Pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a) and Tenn. Code Ann. §§ 68-212-206(c) and 68-212-227 of HWMA 1983, Defendant is liable to the United States

6

and the State for injunctive relief to abate and remedy the conditions at Operable Unit 5 that may present an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of hazardous substances at or from Operable Unit 5.

## THIRD CLAIM FOR RELIEF
### (Recovery of United States' Response Costs)

38. Paragraphs 1 through 26 are realleged and incorporated herein by reference.

39. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in pertinent part:

    Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section-

    \* \* \*

    (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of

    \* \* \*

    shall be liable for - -

    (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan; . . . .

    The amounts recoverable under this section shall include interest on the amounts recoverable under subparagraphs (A) through D. . . .

40. Pursuant to Section 107(a)(2), 42 U.S.C. § 9607(a)(2), Defendant is liable as a successor to the owner and/or operator of the Site when disposal of hazardous substances occurred at the Site.

41. Defendant is liable to the United States pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all response costs not inconsistent with the NCP incurred by the United States in connection with the Site, plus any applicable interest on the response costs incurred.

7

42. Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides in pertinent part that in any action for recovery of costs, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

43. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States is entitled to a declaratory judgment that Defendant is liable to the United States for all further response costs not inconsistent with the NCP incurred by the United States in connection with Operable Units 3 and 5 of the Site.

## FOURTH CLAIM FOR RELIEF
**(Recovery of State's Response Costs)**

44. Paragraphs 1 through 26 and 42 are realleged and incorporated herein by reference.

45. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the State is entitled to a declaratory judgment that Defendant is liable to the State for all further response costs not inconsistent with the NCP incurred by the State in connection with Operable Units 3 and 5 of the Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America and the State of Tennessee, respectfully request that this Court:

A. Order Defendant to abate the conditions at Operable Unit 3 that may present an imminent and substantial endangerment to the public health or welfare or environment, pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a) and Tenn. Code Ann. §§ 68-212-206(c) and 68-212-227, by performing the remedy selected by EPA in the ROD for Operable Unit 3;

B.  Order Defendant to abate the conditions at Operable Unit 5 that may present an imminent and substantial endangerment to the public health or welfare or environment, pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a) and Tenn. Code Ann. §§ 68-212-206(c) and 68-212-227, by performing the remedy selected by EPA in the ROD for Operable Unit 5;

C.  Award the United States a judgment against Defendant, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all response costs not inconsistent with the NCP incurred by the United States in connection with the Site, plus any accrued interest on the costs;

D.  Award the United States a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that Defendant is liable to the United States for all future response costs, not inconsistent with the NCP, incurred by the United States in connection with Operable Unit 3 and Operable Unit 5 of the Site;

E.  Award the State of Tennessee a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that Defendant is liable to the State for all future response costs, not inconsistent with the NCP, incurred by the State of Tennessee in connection with Operable Unit 3 and Operable Unit 5 of the Site; and

F.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

*/s/ Sheila McAnaney*
SHEILA McANANEY
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611

9

Washington, D.C. 20044-7611
Phone: (202) 616-6535
Facsimile: (202) 514-0097

*[signature]*
HERBERT H. SLATERY III
Attorney General and Reporter

*[signature]*
ELIZABETH P. McCARTER
Senior Counsel
Tennessee Attorney General's Office
Environmental Division
P.O. Box 20207
Nashville, TN 37202
Phone: (615) 532-2582
Facsimile: (615) 741-8151

OF COUNSEL:

BILAL M. HARRIS
Associate Regional Counsel
U.S. EPA Region IV
61 Forsyth Street, S.W.
Atlanta, Georgia 30303