UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA
and STATE OF TENNESSEE

Plaintiffs,

Civil Action No. _____

v.

OXY USA INC.,

Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## **REMEDIAL DESIGN/REMEDIAL ACTION (RD/RA) CONSENT DECREE**

# TABLE OF CONTENTS

I.        BACKGROUND .................................................................................................. 1
II.       JURISDICTION ................................................................................................. 2
III.      PARTIES BOUND ............................................................................................. 3
IV.       DEFINITIONS ................................................................................................... 3
V.        GENERAL PROVISIONS ................................................................................. 7
VI.       PERFORMANCE OF THE WORK .................................................................. 9
VII.      REMEDY REVIEW ........................................................................................ 11
VIII.     QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS .................... 11
IX.       ACCESS AND INSTITUTIONAL CONTROLS ............................................. 13
X.        REPORTING REQUIREMENTS OF SETTLING DEFENDANT ..................... 16
XI.       REPORTING BY IMPLEMENTING FEDERAL AGENCY ............................ 17
XII.      EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES ..... 18
XIII.     PROJECT COORDINATORS .......................................................................... 19
XIV.      PERFORMANCE GUARANTEE ..................................................................... 19
XV.       CERTIFICATION OF COMPLETION ............................................................. 24
XVI.      PAYMENTS FOR RESPONSE COSTS ........................................................... 25
XVII.     INDEMNIFICATION AND INSURANCE ....................................................... 28
XVIII.    FORCE MAJEURE ......................................................................................... 29
XIX.      DISPUTE RESOLUTION ................................................................................ 30
XX.       STIPULATED PENALTIES ............................................................................. 33
XXI.      COVENANTS BY PLAINTIFFS ..................................................................... 35
XXII.     COVENANTS BY SETTLING DEFENDANT AND IMPLEMENTING FEDERAL
AGENCY 40
XXIII.    EFFECT OF SETTLEMENT; CONTRIBUTION ............................................. 42
XXIV.     ACCESS TO INFORMATION ......................................................................... 43
XXV.      RETENTION OF RECORDS ........................................................................... 44
XXVI.     NOTICES AND SUBMISSIONS ..................................................................... 45
XXVII.    RETENTION OF JURISDICTION ................................................................... 47
XXVIII.   APPENDICES .................................................................................................. 47
XXIX.     COMMUNITY INVOLVEMENT .................................................................... 48
XXX.      MODIFICATION ............................................................................................. 48
XXXI.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ........................ 48
XXXII.    SIGNATORIES/SERVICE ............................................................................... 49
XXXIII.   FINAL JUDGMENT ....................................................................................... 49

# I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Tennessee, through the Tennessee Department of Environment and Conservation ("State"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607, and T.C.A. § 68-212-201, *et seq.*

B.      The United States and State in their complaint seek, *inter alia*: (1) performance of its portion of the response actions by defendant OXY USA Inc. ("Settling Defendant") at Operable Unit 5 ("OU 5") of the Copper Basin Mining District Superfund Site in Copperhill, Polk County, Tennessee (the "Site"), consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP"); and (2) reimbursement of costs to be incurred by EPA and the Department of Justice ("DOJ") for response actions at OU 5. The Parties acknowledge and agree that this civil action constitutes an "initial action" for purposes of Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

C.      The United States, the State, and Settling Defendant have also entered into a separate Consent Decree in this matter ("OU 3 Consent Decree") providing for Settling Defendant's performance of response actions at Operable Unit 3 at the Site and Settling Defendant's reimbursement of response costs incurred at the Site, including at OU 5, by the United States and the State through the Effective Date of this Consent Decree. The OU 3 Consent Decree is being lodged concurrently with this Consent Decree.

D.      The Tennessee Valley Authority ("TVA" or "Implementing Federal Agency") is a federal agency that has agreed to implement its portion of the response actions at OU 5.

E.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State on May 22, 2013 of negotiations with potentially responsible parties ("PRPs") regarding the implementation of remedial design and remedial action for OU 5 at the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

F.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Forest Service, the United States Fish and Wildlife Service, the Tennessee Valley Authority, and the State of Tennessee on November 7, 2013 of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal and state trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

G.      Defendant OXY USA Inc. does not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that any release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.   TVA does not

1

admit any liability arising out of the transactions or occurrences alleged in any counterclaim that could have been asserted by Settling Defendant or any claim by the State.

H. In response to a release or a substantial threat of a release of hazardous substances at or from OU 5, EPA commenced on December 18, 2002, a Remedial Investigation and Feasibility Study ("RI/FS") for OU 5 pursuant to 40 C.F.R. § 300.430.

I. EPA completed a Remedial Investigation ("RI") Report for OU 5 on May 20, 2008, and EPA completed a Feasibility Study ("FS") Report for OU 5 on April 29, 2011.

J. Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on June 17, 2011, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator, EPA Region 4, based the selection of the response action.

K. The decision by EPA on the remedial action to be implemented at OU 5 is embodied in a final Record of Decision ("ROD"), executed on September 28, 2011, on which the State has given its concurrence. The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

L. Based on the information presently available to EPA and the State, EPA and the State believe that the Work will be properly and promptly conducted by Settling Defendant and Implementing Federal Agency if conducted in accordance with the requirements of this Consent Decree and its appendices.

M. Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the ROD and the Work to be performed by Settling Defendant and Implementing Federal Agency shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

N. The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of OU 5 and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.    JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367, and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Parties. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant and Implementing

2

Federal Agency shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.   PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and the State and upon Settling Defendant and its successors and assigns.   Any change in ownership or corporate status of Settling Defendant or Implementing Federal Agency including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's or Implementing Federal Agency's responsibilities under this Consent Decree.

3.      Settling Defendant shall provide a copy of this Consent Decree to each contractor it hires to perform the Work required by this Consent Decree and to each person representing Settling Defendant with respect to OU 5 or the Work, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.   Settling Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree.   With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.   DEFINITIONS

4.      Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.   Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply solely for purposes of this Consent Decree:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Claims," for purposes of Paragraph 94 only, shall include, but not be strictly limited to, counterclaims, cross-claims, losses, liabilities, actions, subrogation, causes of action, information requests, general notice letters, special notice letters, administrative orders, judicial orders or decrees, suits, judgments, obligations, debts, demands, actual damages, consequential damages, punitive damages, third-party damages, third-party demands, takings, liens, fines, penalties, Future Response Costs, State Future Response Costs, TVA Costs, and the costs and expenses incident thereto (including, without limitation, costs of defense, settlement and attorneys, consultants and/or expert fees).

3

"Consent Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXVIII). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Copper Basin Mining District Site Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"Copper Basin Reach" shall mean that portion of the Ocoee River in Polk County, Tennessee extending from the town of Copperhill to the slack water of the Ocoee No. 3 Reservoir (River Mile ("RM") 38.0 to RM 33.5).

"Critical Infrastructure Information" (or "CII") shall have the same meaning as established in Section 212 of the CII Act of 2002, and means information not customarily in the public domain and related to the security of critical infrastructure or protected systems, including documents, records or other information concerning:

> (1)    Actual, potential, or threatened interference with, attack on, compromise of, or incapacitation of critical infrastructure or protected systems by either physical or computer-based attack or other similar conduct (including the misuse of or unauthorized access to all types of communications and data transmission systems) that violates Federal, State, local, or tribal law, harms interstate commerce of the United States, or threatens public health or safety;

> (2)    The ability of any critical infrastructure or protected system to resist such interference, compromise, or incapacitation, including any planned or past assessment, projection, or estimate of the vulnerability of critical infrastructure or a protected system, including security testing, risk evaluation thereto, risk-management planning, or risk audit; or

> (3)    Any planned or past operational problem or solution regarding critical infrastructure or protected systems, including repair, recovery, reconstruction, insurance, or continuity, to the extent it is related to such interference, compromise, or incapacitation.

"Day" or "day" shall mean a calendar day unless expressly stated to be a working day. The term "working day" shall mean a day other than a Saturday, Sunday, or federal or state holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

4

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs after the Effective Date in reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Paragraph 9 (Notice to Successors-in-Title and Transfers of Real Property), Section IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount of just compensation), Paragraph 45 (Funding for Work Takeover), and Section XXIX (Community Involvement). Notwithstanding the foregoing, Future Response Costs shall not include TVA Costs.

"Implementing Federal Agency" shall mean the Tennessee Valley Authority and its successors and assigns.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Ocoee No. 3 Reservoir" shall mean that portion of the Ocoee River in Polk County, Tennessee extending from river mile ("RM") 33.5 to RM 29.2 and including Ocoee Dam No. 3.

"Operable Unit 5" or "OU 5" shall mean that portion of the Site that includes a portion of the Ocoee River from RM 38 to RM 11.9 including: (1) the Copper Basin Reach; (2) the Ocoee No. 3 Reservoir and Ocoee Dam #3; and (3) the Parksville Reservoir and Ocoee Dam #1.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parksville Reservoir" shall mean that portion of the Ocoee River in Polk County, Tennessee extending from RM 17.1 to RM 11.9, including Ocoee Dam No. 1.

"Parties" shall mean the United States, including EPA and TVA; the State of Tennessee; and Settling Defendant.

"Performance Standards" shall mean the Remedial Action Objectives and the Remedial Goals set forth in Section 8.0 of the ROD.

"Performing Party" shall mean either Settling Defendant or TVA. "Performing Parties" shall mean both the Settling Defendant and TVA.

5

"Plaintiffs" shall mean the State of Tennessee and the United States, including EPA and TVA.

"Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Operable Unit 5 at the Site signed on September 28, 2011, by the Regional Administrator, EPA Region 4, or his/her delegate, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" shall mean all activities Performing Parties are required to perform under the Consent Decree to implement the ROD, in accordance with the SOW, the final Monitored Natural Recovery Plan, and other plans approved by EPA, until the Performance Standards are met, and excluding performance of the activities required under Section XXV (Retention of Records).

"River," for the purposes of Paragraph 94 only, shall mean the Ocoee River and its waters within or however released from OU 5 and those dams known on the Effective Date as Ocoee No. 1, Ocoee No. 2 and Ocoee No. 3 and their related equipment.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean OXY USA Inc., on behalf of itself and its corporate affiliate, Glenn Springs Holdings, Inc., and their successors and assigns.

"Site" shall mean the Copper Basin Mining District Site Superfund Site (CERCLIS ID TN0001890839), located in southeast Polk County Tennessee, adjacent to the cities of Copperhill and Ducktown, Polk County, Tennessee, and depicted generally on the map attached as Appendix C. The Site consists of five operable units ("OUs").

"State" shall mean the State of Tennessee and each department, agency, and instrumentality of the State, including TDEC.

"State Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the State incurs after the Effective Date in reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Paragraph 9 (Notice to Successors-in-Title and Transfers of Real Property), Section IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount of just compensation), Paragraph 45 (Funding for Work Takeover), and Section XXIX (Community Involvement).

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Action at OU 5, as set forth in Appendix B to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by a Performing Party to supervise and direct the implementation of the Work under this Consent Decree.

"TDEC" shall mean the Tennessee Department of Environment and Conservation and any successor departments or agencies of the State.

"Tennessee Valley Authority," referred to herein as "TVA" or "Implementing Federal Agency," is a corporate agency and instrumentality of the United States.

"TVA Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that TVA incurs in performing Work under this Consent Decree that it would not have incurred but for its obligation to perform Work.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States. "United States" includes EPA and TVA, except as expressly stated otherwise.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C.§ 6903(27); and (4) any "hazardous substance" under Tennessee Code Annotated Section 68-212-202(2).

"Work" shall mean all activities and obligations Performing Parties are to perform under this Consent Decree, except the activities required under Section XXV (Retention of Records).

## V.    GENERAL PROVISIONS

5.      <u>Objectives of the Parties</u>.    The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the design and implementation of response actions at OU 5 by Performing Parties, and to resolve certain claims of Plaintiffs against Settling Defendant and certain claims of the State and Settling Defendant that have been or could have been asserted against the United States with regard to OU 5 as provided in this Consent Decree.

6.      <u>Commitments by Settling Defendant and TVA</u>.

a.      Performing Parties shall finance and perform their respective portions of the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth in this Consent Decree or developed by Performing Parties and approved by EPA pursuant to this Consent Decree. Settling Defendant and Implementing Federal Agency shall be liable solely for their respective portions of the Work, including any modifications under Paragraph 13 (Modification of SOW or Related Work Plans).

b.      Settling Defendant shall pay EPA, TVA and the State for Future Response Costs, TVA Costs and State Future Response Costs, respectively, as provided in this Consent Decree.

c.      Each Performing Party shall fulfill its respective obligations under this Consent Decree and the SOW regardless of whether the other Performing Party has fulfilled its obligations under this Consent Decree and the SOW.   The failure of one Performing Party to timely fulfill any of its obligations under this Consent Decree and the SOW shall not be a basis for the other Performing Party to fail to timely perform any of its obligations under the Consent Decree and the SOW.

7.      <u>Compliance With Applicable Law</u>.   All activities undertaken by Performing Parties pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.   Performing Parties must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW.   The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

8.      <u>Permits</u>.

a.      As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).   Where any portion of the Work that is not on-site requires a federal or state permit or approval, the applicable Performing Party shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.      A Performing Party may seek relief under the provisions of Section XVIII (Force Majeure) for any delay in the performance of its respective portion of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8.a and required for such portion of the Work, provided that it has submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c.      This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

9.      <u>Notice to Successors-in-Title and Transfers of Real Property</u>.

In the event that Implementing Federal Agency enters into any contract for the sale or transfer of real property within OU 5, Implementing Federal Agency will comply with CERCLA Section 120(h) and Paragraph 20.c(2) of this Consent Decree.   Pursuant to Section 120(h) of CERCLA, each deed entered into for the transfer of real property is required to contain the following items to the extent such information is available:

a.      Notice of the type and quantities of hazardous substances known to have been released or disposed of at the property;

8

b.      Notice of the time at which such release or disposal took place;

c.      A description of the remedial action taken;

d.      A covenant warranting that:

(1)      All remedial action necessary to protect human health and the environment with respect to any hazardous substance remaining on the property has been taken before the date of such transfer; and

(2)      Any additional remedial action found to be necessary after the date of such transfer shall be conducted by Implementing Federal Agency; and

e.      A clause granting the United States access to the property in any case in which remedial action or corrective action is found to be necessary after the date of such transfer.

## VI.   PERFORMANCE OF THE WORK

10.      <u>Selection of Supervising Contractor</u>.

a.      All aspects of the Work to be performed by Settling Defendant pursuant to Sections VI (Performance of the Work), VIII (Quality Assurance, Sampling, and Data Analysis), and IX (Access and Institutional Controls) shall be under the direction and supervision of its Supervising Contractor, the selection of which shall be subject to disapproval by EPA after a reasonable opportunity for review and comment by the State.   Within ten days after the lodging of this Consent Decree, Settling Defendant shall notify EPA and the State in writing of the name, title, and qualifications of any contractor proposed to be a Supervising Contractor.   With respect to any contractor proposed to be a Supervising Contractor, Settling Defendant shall demonstrate that the proposed contractor has a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan ("QMP").    The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.    EPA will issue a notice of disapproval or an authorization to proceed regarding hiring of the proposed contractor.   If at any time thereafter, Settling Defendant proposes to change a Supervising Contractor, Settling Defendant shall give such notice to EPA and the State and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by the State, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.      If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendant in writing.    Settling Defendant shall submit to EPA and the State a list of contractors, including the qualifications of each contractor, that would be acceptable to it within 30 days after receipt of EPA's disapproval of the contractor previously proposed.    EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors.    Settling Defendant may select any

contractor from that list that is not disapproved and shall notify EPA and the State of the name of the contractor selected within 21 days after EPA's authorization to proceed.

   c. If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph, and this failure prevents Settling Defendant from meeting one or more deadlines in a plan approved by EPA pursuant to this Consent Decree, Settling Defendant may seek relief under Section XVIII (Force Majeure).

   11. <u>Monitored Natural Recovery Work</u>.

   a. Within 60 days of the Effective Date of this Consent Decree, Settling Defendant shall submit to EPA and the State a plan for its portion of the Remedial Action for OU 5 ("Monitored Natural Recovery ("MNR") Plan"), as set forth in the SOW.  The MNR Plan shall provide for implementation of the remedy set forth in Section 12.2 of the ROD for OU 5, in accordance with the SOW, and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree, and/or the SOW.  Upon its approval by EPA, the MNR Plan shall become incorporated into and enforceable under this Consent Decree.

   b. The MNR Plan shall include plans and schedules for implementation of all sampling and analysis (including, but not limited to, a Quality Assurance Project Plan in accordance with Section VIII (Quality Assurance, Sampling, and Data Analysis)); a Health and Safety Plan for field activities required by the MNR Plan that conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120; and a schedule for sampling, analysis, and submission of data and reports to EPA.

   c. Upon approval of its MNR Plan by EPA, after a reasonable opportunity for review and comment by the State and TVA, Settling Defendant shall implement the MNR Plan.  Settling Defendant shall submit to EPA and the State all plans, reports, and other deliverables required under the approved MNR Plan in accordance with the approved schedule for review and approval pursuant to Section XII (EPA Approval of Plans, Reports, and Other Deliverables).  Unless otherwise directed by EPA, Settling Defendant shall not commence further MNR activities at OU 5 prior to approval of the MNR Plan.

   d. Settling Defendant shall continue to implement the MNR Plan until the Performance Standards are achieved.

   12. <u>Ocoee No. 3 Reservoir and Parksville Reservoir (Ocoee No. 1 Dam) Work</u>.

   a. Within 60 days of the Effective Date of this Consent Decree or by May 1, 2016, whichever is later, Implementing Federal Agency shall implement its portion of the Remedial Action for OU 5 (Hydraulic Controls at Ocoee No. 3 Reservoir and Permanent Inundation Using Flashboards and Superboards at the Parksville Reservoir (Ocoee No. 1)) ("TVA Work"), as set forth in the ROD, and in accordance with the SOW and other requirements set forth in the ROD and this Consent Decree.

   b. Implementing Federal Agency shall continue to implement the TVA Work until the Performance Standards are achieved.

10

13.     Modification of SOW or Related Work Plans.

a.      If EPA determines that it is necessary to modify the work specified in the SOW and/or in work plans developed pursuant to the SOW to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, and such modification is consistent with the scope of the remedy set forth in the ROD, then EPA may issue such modification in writing and shall notify the applicable Performing Party of such modification.   For the purposes of this Paragraph, Paragraph 47 (Completion of the Work: Settling Defendant), and Paragraph 48 (Completion of the Work: Implementing Federal Agency) only, the "scope of the remedy set forth in the ROD" is: 1) for the Copper Basin Reach, Monitored Natural Recovery; 2) for the Ocoee No. 3 Reservoir, Monitored Natural Recovery with Hydraulic Controls; and 3) for the Parksville Reservoir, Monitored Natural Recovery with Permanent Inundation using Flashboards and Superboards.   If the applicable Performing Party objects to the modification, it may, within 30 days after EPA's notification, seek dispute resolution under Paragraph 65 (Record Review).

b.      The SOW and/or related work plans shall be modified: (1) in accordance with the modification issued by EPA; or (2) if the applicable Performing Party invokes dispute resolution, in accordance with the final resolution of the dispute.   The modification shall become incorporated into and enforceable under this Consent Decree, and the applicable Performing Party shall implement all work required by such modification.   Settling Defendant shall incorporate any such applicable modification into the MNR Plan under Paragraph 11 (Monitored Natural Recovery Work), and Implementing Federal Agency shall incorporate any such applicable modification into the Work under Paragraph 12 (Ocoee No. 3 Reservoir and Parksville Reservoir (Ocoee No. 1 Dam) Work), as applicable.

c.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

14.     Nothing in this Consent Decree, the SOW, or related work plans constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the SOW and the work plans will achieve the Performance Standards.

## VII.   REMEDY REVIEW

15.     Periodic Review.   Settling Defendant shall conduct any studies and investigations that EPA requests in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and any applicable regulations.

## VIII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

16.     Quality Assurance.

a.      Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance, and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)"

(EPA/240/B-01/003, March 2001, reissued May 2006), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/240/R-02/009, December 2002), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendant of such amendment. Amended guidelines shall apply only to procedures conducted after such notification.

        b.    Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendant shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") for activities required by the MNR Plan that is consistent with the SOW, the NCP, and applicable guidance documents. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree. Settling Defendant shall ensure that EPA and State personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendant in implementing this Consent Decree. In addition, Settling Defendant shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring. Settling Defendant shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods that are documented in the "USEPA Contract Laboratory Program Statement of Work for Inorganic Analysis, ILM05.4," and the "USEPA Contract Laboratory Program Statement of Work for Organic Analysis, SOM01.2," and any amendments made thereto during the course of the implementation of this Consent Decree; however, upon approval by EPA, after opportunity for review and comment by the State, Settling Defendant may use other analytical methods that are as stringent as or more stringent than the CLP-approved methods. Settling Defendant shall ensure that all laboratories it uses for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent quality assurance/quality control ("QA/QC") program. Settling Defendant shall use only laboratories that have a documented Quality System that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. Settling Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree are conducted in accordance with the procedures set forth in the QAPP approved by EPA.

       17.    Upon request, Settling Defendant shall allow split or duplicate samples to be taken by EPA and the State or their authorized representatives. Settling Defendant shall notify EPA and the State not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA and the State shall have the right to take any additional samples that EPA or the State deems necessary. Upon request, EPA and the State shall allow Settling Defendant to take split or duplicate samples of any samples they take as part of Plaintiffs' oversight of Settling Defendant's implementation of the Work.

18.      Settling Defendant shall submit to EPA and the State two copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendant with respect to OU 5 of the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

19.      Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## IX.      ACCESS AND INSTITUTIONAL CONTROLS

20.      If real property within or adjacent to OU 5 of the Site, or any other real property where access or land/water use restrictions are needed, is owned or controlled by a Performing Party:

a.      Such Performing Party shall, commencing on the date of lodging of the Consent Decree, provide EPA, the State, the other Performing Party, and their representatives, contractors, and subcontractors, with access at all reasonable times to such real property, to conduct any activity regarding the Consent Decree including, but not limited to, the activities listed in this Paragraph 20.   In the case of TVA facilities, such access shall be subject to necessary and appropriate security and/or safety precautions.

(1)      Conducting the Work;

(2)      Monitoring the Work;

(3)      Verifying any data or information submitted to EPA or the State;

(4)      Conducting investigations regarding contamination at or near OU 5 of the Site;

(5)      Obtaining samples;

(6)      Assessing the need for, planning, or implementing additional response actions at or near OU 5 of the Site;

(7)      Assessing implementation of quality assurance and quality control practices as defined in the approved CQAP;

(8)      Implementing the Work pursuant to the conditions set forth in Paragraph 84 (Work Takeover);

(9)      Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by the Performing Party or its agents, consistent with Section XXIV (Access to Information);

(10)      Assessing the Performing Party's compliance with the Consent Decree;

13

(11)     Determining whether OU 5 of the Site or other real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

(12)     Implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls.

b.     Commencing on the date of lodging of the Consent Decree, such Performing Party shall not use OU 5 of the Site, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.   The restrictions shall include, but not be limited to, those listed in this subparagraph.

(1)     Except for (1) materials associated with the repair or replacement of Ocoee Dam #2 and (2) de minimis amounts of materials associated with normal operation of the dam or maintenance activities to keep flow appurtenances clear of debris, or unless expressly approved by EPA and TDEC, a Performing Party shall not remove, excavate, dig, grade, dredge, or release sediment, soil, sand, gravel, minerals, organic matter, or materials of any kind, that are located anywhere from the bed up to the high water mark of the Ocoee River and/or behind the TVA's dams within OU 5, from RM 38 to RM 12, including:   (1) the Copper Basin Reach; (2) the Ocoee No. 3 Reservoir and Ocoee Dam #3; and (3) Ocoee Dam #1; and

(2)     Unless expressly approved by EPA and TDEC, a Performing Party shall not remove, excavate, dig, grade, dredge, or release sediment, soil, sand, gravel, minerals, organic matter, or materials of any kind from the 300 acre contaminated sediment delta, known as the Parksville Delta, located at and in the Parksville Reservoir.

c.     Implementing Federal Agency will:

(1)     Notify EPA and the State at least six (6) months prior to any transfer or sale by Implementing Federal Agency of real property it owns in OU 5, including a proposed federal-to-federal transfer of property.     Before such transfer or sale, Implementing Federal Agency will execute and record in the appropriate land records office Proprietary Controls that:   (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 20.a; and (ii) grant the right to enforce the land/water use restrictions set forth in Paragraph 20.b, including, but not limited to, the specific restrictions listed therein, as further specified in this Paragraph 20.c.   The Proprietary Controls shall be granted to one or more of the following persons, as determined by EPA:   (i) the United States, on behalf of EPA, and its representatives; (ii) the State and its representatives; (iii) the other Performing Party and its representatives; and/or (iv) other appropriate grantees. The Proprietary Controls, other than those granted to the United States, shall include a designation that EPA and the State are third-party beneficiaries, allowing EPA or the State to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property.   If any Proprietary Controls are granted to any Performing

14

Party pursuant to this Paragraph 20.c, then such Performing Party shall monitor, maintain, report on, and enforce such Proprietary Controls.

        (2)       Within 30 days after notifying EPA and the State of the proposed transfer or sale, submit to EPA for review and approval regarding such real property: (i) draft Proprietary Controls, in substantially the form attached hereto as Appendix E, that are enforceable under state law; and (ii) a current title insurance commitment or other evidence of title acceptable to EPA, that shows title to the land affected by the Proprietary Controls to be free and clear of all prior liens and encumbrances (except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Implementing Federal Agency is unable to obtain release or subordination of such prior liens or encumbrances).

        (3)       Within 15 days of EPA's approval and acceptance of the Proprietary Controls and the title evidence, update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, record the Proprietary Controls with the appropriate land records office. Within 30 days after recording the Proprietary Controls, Implementing Federal Agency shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded Proprietary Controls showing the clerk's recording stamps. If the Proprietary Controls are to be conveyed to the United States, the Proprietary Controls and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title shall be obtained as required by 40 U.S.C. § 3111.

    21.      If real property within OU 5 of the Site, or any other real property where access and/or land/water use restrictions are needed to implement the SOW or ROD, is owned or controlled by persons other than a Performing Party, the United States or the State, Settling Defendant shall use best efforts to secure from such persons:

        a.       an agreement to provide access thereto for the United States, the State, and their representatives, contractors, and subcontractors, to conduct any activity regarding the Consent Decree including, but not limited to, the activities listed in Paragraph 20.a; and

        b.       an agreement, enforceable by Settling Defendant, to refrain from using the Site, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action. The agreement shall include, but not be limited to, the land/water use restrictions listed in Paragraph 20.b.

    22.      For purposes of Paragraphs 20.c(2) and 21.a and 21.b, "best efforts" includes the payment of reasonable sums of money to obtain access, an agreement to restrict land/water use, Proprietary Controls, and/or an agreement to release or subordinate a prior lien or encumbrance. If, within 45 days after EPA's request for Proprietary Controls, the applicable Performing Party has not: (a) obtained agreements to provide access, restrict land/water use, or record Proprietary

Controls, as required by Paragraph 20 or 21; or (b) obtained, pursuant to Paragraph 20, agreements from the holders of prior liens or encumbrances to release or subordinate such liens or encumbrances to the Proprietary Controls, the Performing Party shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that the Performing Party has taken to attempt to comply with Paragraph 20 or 21. The United States may, as it deems appropriate, assist the Performing Party in obtaining access, agreements to restrict land/water use, Proprietary Controls, or the release or subordination of a prior lien or encumbrance. Settling Defendant shall reimburse the United States under Section XVI (Payments for Response Costs) for all costs incurred, direct or indirect, by the United States (except for costs incurred by TVA) or EPA, respectively, in obtaining such access, agreements to restrict land/water use, Proprietary Controls, and/or the release/subordination of prior liens or encumbrances, including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

23.     If EPA determines that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls are needed at or in connection with OU 5 of the Site, the Performing Parties shall cooperate with EPA's and the State's efforts to secure and ensure compliance with such governmental controls.

24.     Notwithstanding any provision of the Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## X.     REPORTING REQUIREMENTS OF SETTLING DEFENDANT

25.     In addition to any other requirement of this Consent Decree, Settling Defendant shall submit to EPA, the State, and TVA two copies of written annual progress reports that: (a) describe the actions that have been taken toward achieving compliance with this Consent Decree during the previous year; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendant or its contractors or agents in the previous year; (c) include any modifications to the work plan or other schedules that Settling Defendant has proposed to EPA or that have been approved by EPA; and (d) describe all activities undertaken in support of the Community Involvement Plan during the previous year and those to be undertaken in the next year. Settling Defendant shall submit these annual reports to EPA and the State by the end of the first calendar quarter following the lodging of this Consent Decree until EPA notifies Settling Defendant pursuant to Paragraph 47.b of Section XV (Certification of Completion). If requested by EPA or the State, Settling Defendant shall also provide briefings for EPA and the State to discuss the progress of its portion of the Work.

26.     Settling Defendant shall notify EPA of any change in the schedule described in the annual progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

27.    Upon the occurrence of any event during performance of its portion of the Work that Settling Defendant is required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-know Act ("EPCRA"), 42 U.S.C. § 11004, Settling Defendant shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator nor Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 4, United States Environmental Protection Agency.    These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

28.    Within twenty (20) days after the onset of such an event, Settling Defendant shall furnish to EPA and the State a written report, signed by Settling Defendant's Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto.    Within 30 days after the conclusion of such an event, Settling Defendant shall submit a report setting forth all actions taken in response thereto.

29.    Settling Defendant shall submit two copies of all plans, reports, data, and other deliverables required by the SOW, the MNR Plan, and any other approved plans to EPA in accordance with the schedules set forth in such plans.    Settling Defendant shall simultaneously submit two copies of all such plans, reports, data, and other deliverables to the State.    Upon request by EPA or the State, Settling Defendant shall submit in electronic form all or any portion of any deliverables it is required to submit pursuant to the provisions of this Consent Decree.

30.    All deliverables submitted by Settling Defendant to EPA that purport to document Settling Defendant's compliance with the terms of this Consent Decree shall be signed by an authorized representative of Settling Defendant.

## XI.    REPORTING BY IMPLEMENTING FEDERAL AGENCY

31.    Implementing Federal Agency will notify the EPA and State Project Coordinators and Settling Defendant promptly and in writing of the following events at Ocoee No. 1:    (1) annual implementation of the winter guide curve; and (2) annual inspections of the flashboard/superboard system.

32.    Implementing Federal Agency will notify EPA and Settling Defendant orally or in writing of any material deviations in the winter guide curve within thirty days of any such deviations.

33.    In the event of any flashboard or superboard failure or damage to the flashboard or superboard system, Implementing Federal Agency will:

a.    Notify EPA, the State and Settling Defendant of the failure as soon as practicable, but in no case later than seven days after the failure. This requirement will be satisfied by an oral notification within seven days, followed by a subsequent written notification;

17

b.     Within 30 days of the failure, submit to EPA a plan to replace the damaged or lost boards or otherwise repair damaged portions of the system within a reasonable time period deemed safe to conduct the work; and

c.     Notify EPA, the State and Settling Defendant within thirty (30) days of the completion of any such repair or replacement.

## XII.   EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES

34.     <u>Initial Submissions</u>.

a.     After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall, in a written notice to the applicable Performing Party: (1) approve, in whole or in part, the submission; (2) approve the submission upon specified conditions; (3) disapprove, in whole or in part, the submission; or (4) any combination of the foregoing.

b.     EPA also may modify the initial submission to cure deficiencies in the submission if:   (1) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (2) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

35.     <u>Resubmissions</u>.   Upon receipt of a notice of disapproval under Paragraph 34.a(3) or (4), or if required by a notice of approval upon specified conditions under Paragraph 34.a(2), the applicable Performing Party shall, within 30 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.   After review of the resubmitted plan, report, or other deliverable, EPA shall, in a written notice to the applicable Performing Party: (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring the Performing Party to correct the deficiencies; or (e) any combination of the foregoing.

36.     <u>Material Defects</u>.   If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 34.b(2) or 35 due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 68.   The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the accrual and payment of any stipulated penalties regarding Settling Defendant's submissions under this Section.

37.     <u>Implementation</u>.   Upon approval, approval upon conditions, or modification by EPA under Paragraph 34 (Initial Submissions) or Paragraph 35 (Resubmissions), of any plan, report, or other deliverable, or any portion thereof: (a) such plan, report, or other deliverable, or portion thereof, shall become incorporated into and enforceable under this Consent Decree; and

18

(b) Performing Parties shall take any action required by such plan, report, or other deliverable, or portion thereof, subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA. The implementation of any non-deficient portion of a plan, report, or other deliverable submitted or resubmitted under Paragraph 34 or 35 shall not relieve Settling Defendant of any liability for stipulated penalties under Section XX (Stipulated Penalties).

## XIII. PROJECT COORDINATORS

38. Within twenty (20) days after lodging this Consent Decree, Settling Defendant, Implementing Federal Agency, the State, and EPA will notify each other, in writing, of the name, address, telephone number, and email address of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made. Performing Parties' Project Coordinators shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. Performing Parties' Project Coordinators shall not be attorneys for any Performing Parties in this matter. Project Coordinators may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

39. Plaintiffs may designate other representatives, including, but not limited to, EPA and State employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the NCP, 40 C.F.R. Part 300. EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Decree, except that EPA may halt Work that has also been ordered by TDEC Director's Order WPC09-0008 only with approval from the State, and to take any necessary response action when he or she determines that conditions at OU 5 of the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

40. If requested by EPA and/or the State, Performing Parties' Project Coordinators will meet with EPA and/or TDEC's Project Coordinator on an annual basis unless emergent conditions require more frequent meetings.

## XIV. PERFORMANCE GUARANTEE

41. In order to ensure completion of the Work, Settling Defendant shall establish and maintain a performance guarantee, which must be satisfactory in form and substance to EPA, for the benefit of EPA in the amount of $1,408,877, (hereinafter "Estimated Cost of the Work") in one or more of the following forms:

a.	A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.	One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (1) that has the authority to issue letters of credit and (2) whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.	A trust fund established for the benefit of EPA that is administered by a trustee (1) that has the authority to act as a trustee and (2) whose trust operations are regulated and examined by a federal or state agency;

d.	A policy of insurance that provides EPA with acceptable rights as a beneficiary thereof and that is issued by an insurance carrier (i) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (ii) whose insurance operations are regulated and examined by a federal or state agency;

e.	A demonstration by Settling Defendant that it meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the remaining amount of the Estimated Cost of the Work (plus the amount(s) of any other environmental obligations under federal or state law financially assured through the use of a financial test or guarantee), provided that all other requirements of 40 C.F.R. § 264.143(f) are met to EPA's satisfaction; or

f.	A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following:   (1) a direct or indirect parent company of Settling Defendant, or (2) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test and reporting requirements for owners and operators set forth in subparagraphs (1) through (8) of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other environmental obligations under federal, state, or tribal law financially assured through the use of a financial test or guarantee) that it proposes to guarantee hereunder.

42.	Settling Defendant has selected, and EPA has found satisfactory, as an initial performance guarantee, a written corporate guarantee specified under Paragraph 41.f, in the form attached hereto as Appendix F.   Within 30 Days after the Effective Date, Settling Defendant shall secure all executed and/or otherwise finalized mechanisms or other documents consistent with the form of financial assurance attached as Appendix F and shall submit such mechanisms and documents to the EPA Regional Financial Management Officer in accordance with Section XXVI (Notices and Submissions), with a copy to Financial Assurance Specialist, Region 4, U.S. Environmental Protection Agency, Atlanta Federal Center, 61 Forsyth Street, Atlanta, Georgia 30303-8960, and to the United States, EPA and the State as specified in Section XXVI (Notices and Submissions).

43.	If, at any time after the Effective Date and before issuance of the Certification of Completion of the Work pursuant to Paragraph 47.b, Settling Defendant provides a performance

guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 41.e or 41.f, Settling Defendant shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f) relating to these mechanisms unless otherwise provided in this Consent Decree, including but not limited to: (a) the initial submission of required financial reports and statements from the relevant entity's chief financial officer ("CFO") and independent certified public accountant ("CPA"), in the form prescribed by EPA in its financial test sample CFO letters and CPA reports available at: http://cfpub.epa.gov/compliance/models/view.cfm?model_ID=573; (b) the annual resubmission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (c) the prompt notification of EPA after each such entity determines that it no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1) and in any event within 90 days after the close of any fiscal year in which such entity no longer satisfies such financial test requirements. For purposes of the performance guarantee mechanisms specified in this Section XIV, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to include the Work; the terms "current closure cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to include the Estimated Cost of the Work; the terms "owner" and "operator" shall be deemed to refer to Settling Defendant making a demonstration under Paragraphs 41.e or 41.f; and the terms "facility" and "hazardous waste facility" shall be deemed to include OU 5 and the Site.

44.     In the event that EPA determines at any time that a performance guarantee provided by Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing its portion of the Work or for any other reason, or in the event that Settling Defendant becomes aware of information indicating that a performance guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing its portion of the Work or for any other reason, Settling Defendant, within 30 days after receipt of notice of EPA's determination or, as the case may be, within 30 days after Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of performance guarantee listed in Paragraph 41 that satisfies all requirements set forth in this Section XIV; provided, however, that if Settling Defendant cannot obtain such revised or alternative form of performance guarantee within such 30-day period, and provided further that Settling Defendant shall have commenced to obtain such revised or alternative form of performance guarantee within such 30-day period, and thereafter diligently proceeds to obtain the same, EPA shall extend such period for such time as is reasonably necessary for Settling Defendant in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed 60 days. On day 30, Settling Defendant shall provide to EPA a status report on its efforts to obtain the revised or alternative form of guarantee. In seeking approval for a revised or alternative form of performance guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 46.b(2). Settling Defendant's inability to post a performance guarantee for completion of its portion of the Work shall in no way excuse performance of any other requirements of this Consent Decree,

21

including, without limitation, the obligation of Settling Defendant to complete its portion of the Work in strict accordance with the terms of this Consent Decree.

45. _Funding for Work Takeover_.   The commencement of any Work Takeover of Settling Defendant's portion of the Work pursuant to Paragraph 84 shall trigger EPA's right to receive the benefit of Settling Defendant's performance guarantee(s) provided pursuant to Paragraph 41 and at such time EPA shall have immediate access to resources guaranteed under any such performance guarantee(s), whether in cash or in kind, as needed to continue and complete Settling Defendant's portion of the Work assumed by EPA under the Work Takeover. Upon the commencement of any Work Takeover under Paragraph 84, if (a) for any reason EPA is unable to promptly secure the resources guaranteed under any such performance guarantee(s), whether in cash or in kind, necessary to continue and complete Settling Defendant's portion of the Work assumed by EPA under the Work Takeover, or (b) in the event that the performance guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 41.e or Paragraph 41.f, Settling Defendant (or in the case of Paragraph 41.f, the guarantor) shall immediately upon written demand from EPA deposit into a special account within the EPA Hazardous Substance Superfund or such other account as EPA may specify, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of completing its portion of the Work as of such date, as determined by EPA.   In addition, if at any time EPA is notified by the issuer of a performance guarantee that such issuer intends to cancel the performance guarantee mechanism it has issued, then, unless Settling Defendant provides a substitute performance guarantee mechanism in accordance with this Section XIV no later than 30 days prior to the impending cancellation date, EPA shall be entitled (as of and after the date that is 30 days prior to the impending cancellation) to draw fully on the funds guaranteed under the then-existing performance guarantee.   All EPA Work Takeover costs related to Settling Defendant's portion of the Work not reimbursed under this Paragraph shall be reimbursed by Settling Defendant under Section XVI (Payments for Response Costs).

46. _Modification of Amount and/or Form of Performance Guarantee_.

a. _Reduction of Amount of Performance Guarantee_.   If Settling Defendant believes that the estimated cost of completing the Work has diminished below the amount set forth in Paragraph 41, Settling Defendant may, on any anniversary of the Effective Date, or at any other time agreed to by EPA, petition EPA in writing to request a reduction in the amount of the performance guarantee provided pursuant to this Section so that the amount of the performance guarantee is equal to the estimated cost of completing Settling Defendant's portion of the Work.   Settling Defendant shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the estimated cost of completing Settling Defendant's portion of the Work and the basis upon which such cost was calculated.   In seeking approval for a reduction in the amount of the performance guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 46.b(2) for requesting a revised or alternative form of performance guarantee, except as specifically provided in this Paragraph 46.a.   If EPA decides to accept Settling Defendant's proposal for a reduction in the amount of the performance guarantee, either to the amount set forth in Settling Defendant's written proposal or to some other amount as selected by

22

EPA, EPA will notify the petitioning Settling Defendant of such decision in writing. Upon EPA's acceptance of a reduction in the amount of the performance guarantee, the Estimated Cost of Settling Defendant's portion of the Work shall be deemed to be the estimated cost of completing Settling Defendant's portion of the Work set forth in EPA's written decision. After receiving EPA's written decision, Settling Defendant may reduce the amount of the performance guarantee in accordance with and to the extent permitted by such written acceptance and shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding in accordance with Paragraph 46.b(2). In the event of a dispute, Settling Defendant may reduce the amount of the performance guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution). No change to the form or terms of any performance guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 44 or 46.b.

   b. <u>Change of Form of Performance Guarantee.</u>

     (1) If, after the Effective Date, Settling Defendant desires to change the form or terms of any performance guarantee(s) provided pursuant to this Section, Settling Defendant may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form or terms of the performance guarantee provided hereunder. The submission of such proposed revised or alternative performance guarantee shall be as provided in Paragraph 46.b(2). Any decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendant pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

     (2) Settling Defendant shall submit a written proposal for a revised or alternative performance guarantee to EPA that shall specify, at a minimum, the estimated cost of completing Settling Defendant's portion of the Work, the basis upon which such cost was calculated, and the proposed revised performance guarantee, including all proposed instruments or other documents required in order to make the proposed performance guarantee legally binding. The proposed revised or alternative performance guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Defendant shall submit such proposed revised or alternative performance guarantee to the EPA Regional Financial Management Officer in accordance with Section XXVI (Notices and Submissions), with a copy to Financial Assurance Specialist, Region 4, U.S. Environmental Protection Agency, Atlanta Federal Center, 61 Forsyth Street, Atlanta, Georgia 30303-8960. EPA will notify Settling Defendant in writing of its decision to accept or reject a revised or alternative performance guarantee submitted pursuant to this Paragraph. Within sixty (60) days after receiving a written decision approving the proposed revised or alternative performance guarantee, Settling Defendant shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such performance guarantee(s) shall thereupon be fully effective. Settling Defendant shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional

23

Financial Management Officer within twenty (20) days after executing and/or finalizing such documents, in accordance with Section XXVI (Notices and Submissions), with a copy to Financial Assurance Specialist, Region 4, U.S. Environmental Protection Agency, Atlanta Federal Center, 61 Forsyth Street, S.W., Atlanta, Georgia 30303-8960 and to the United States and EPA and the State as specified in Section XXVI.

       c.    <u>Release of Performance Guarantee</u>.   Settling Defendant shall not release, cancel, or discontinue any performance guarantee provided pursuant to this Section except as provided in this Paragraph.   If Settling Defendant receives written notice from EPA in accordance with Paragraph 47 that Settling Defendant's portion of the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Defendant in writing, Settling Defendant may thereafter release, cancel, or discontinue the performance guarantee(s) provided pursuant to this Section.   In the event of a dispute, Settling Defendant may release, cancel, or discontinue the performance guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).

## XV.   CERTIFICATION OF COMPLETION

47.    <u>Completion of the Work:   Settling Defendant</u>.

       a.      Within 90 days after Settling Defendant concludes that all phases of the Work for which it is responsible have been fully performed, Settling Defendant shall submit a written report by a registered professional engineer stating that its Work has been completed in full satisfaction of the requirements of this Consent Decree.   The report shall contain the following statement, signed by a responsible corporate official of Settling Defendant or Settling Defendant's Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.   Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.   I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete its portion of the Work, provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 13.   EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Defendant to submit a

schedule to EPA for approval pursuant to Section XII (EPA Approval of Plans, Reports, and Other Deliverables). Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b. If EPA concludes, based on the initial or any subsequent request for Certification of Completion of the Work by Settling Defendant and after a reasonable opportunity for review and comment by the State, that Settling Defendant's portion of the Work has been performed in accordance with this Consent Decree, EPA will so notify Settling Defendant in writing within 60 days of any such comment received from the State, or 180 days of the initial request by Settling Defendant under Paragraph 47.a.

48. Completion of the Work: Implementing Federal Agency. If EPA concludes that Performance Standards have been met, EPA will notify Implementing Federal Agency in writing that it may discontinue conducting its portion of the Work.

## XVI. PAYMENTS FOR RESPONSE COSTS

49. Payments by Settling Defendant to EPA for Future Response Costs. Settling Defendant shall pay to EPA all Future Response Costs not inconsistent with the NCP.

a. On a periodic basis, EPA will send Settling Defendant a bill requiring payment that includes a SCORPIOS Report and a DOJ case cost summary. Settling Defendant shall make all payments within 30 days after Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in Paragraph 53, in accordance with Paragraph 52.a (Payment Instructions for Settling Defendant).

b. The total amount to be paid by Settling Defendant pursuant to this Paragraph 49 shall be deposited by EPA in the Copper Basin Mining District Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

50. Payment by Settling Defendant to TVA for TVA Costs. Settling Defendant shall pay to TVA the amount of $360,467.42 as complete and final payment for all TVA Costs. Such payment shall be made within 60 days of the Effective Date in accordance with Paragraph 52.b.

51. Payments by Settling Defendant to State. Settling Defendant shall pay to the State all State Future Response Costs not inconsistent with the NCP. The State will send Settling Defendant a bill requiring payment that includes an Invoice - Statement of Cost on a periodic basis. Settling Defendant shall make all payments within 60 days after Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in Paragraph 53. Settling Defendant shall make all payments to the State required by this Paragraph in accordance with Paragraph 52.c.

52. <u>Payment Instructions for Settling Defendant</u>.

a. <u>Instructions for Future Response Costs Payments to EPA and Stipulated Penalty Payments</u>. All payments required, elsewhere in this Consent Decree, to be made in accordance with this Paragraph 52.a shall be made by Fedwire EFT to:

Federal Reserve Bank of New York
ABA = 021030004
Account = 68010727
SWIFT Address = FRNYUS33
33 Liberty Street
New York NY 10045

Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental Protection Agency"

Such payments shall reference the CDCS Number, Site/Spill ID Number A485, and DOJ Case Number 90-11-3-10404. At the time of any such payment, Settling Defendant shall send notice that payment has been made to the United States, and to EPA, in accordance with Section XXVI (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268. Such notice shall also reference the CDCS Number, Site/Spill ID Number, and DOJ Case Number.

b. <u>Instructions for Payment to TVA</u>. Payment to TVA shall be by check made payable to the Tennessee Valley Authority and mailed to the following address:

Attn: Jodie Birdwell
Tennessee Valley Authority
400 West Summit Hill Drive, WT 6A-K
Knoxville, TN 37902-1401.

c. <u>Instructions for Payments to the State</u>. Payment to the State shall be by check made payable to the State of Tennessee and should include the Site number on the check.

Payments to the State shall be mailed to:

Attn: Andy Binford
Tennessee Department of Environment and Conservation
Division of Remediation
William R. Snodgrass TN Tower
312 Rosa L. Parks Avenue
14th Floor
Nashville, TN   37243

53. Settling Defendant may contest any Future Response Costs billed under Paragraph 49 (Payments by Settling Defendant to EPA for Future Response Costs) or Paragraph 51 (Payments by Settling Defendant to State) if it determines that EPA or the State has made a

mathematical or accounting error or included a cost item that is not within the definition of Future Response Costs or State Future Response Costs, respectively, or if it believes EPA or the State incurred excess costs as a direct result of an EPA or State action or omission that was inconsistent with a specific provision or provisions of the NCP. Such objection shall be made in writing within 30 days after receipt of the bill and must be sent to the United States (if EPA's accounting is being disputed) or the State (if the State's accounting is being disputed) pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs or State Future Response Costs and the basis for objection. In the event of an objection, Settling Defendant shall pay all uncontested Future Response Costs and State Future Response Costs to EPA or the State, as applicable, within 30 days after Settling Defendant's receipt of the bill requiring payment. Simultaneously, Settling Defendant shall establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC"), and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs or State Future Response Costs. Settling Defendant shall send to EPA and the State, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs or State Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, Settling Defendant shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If EPA or the State prevails in the dispute, Settling Defendant shall pay the sums due (with accrued interest) to EPA or the State, as applicable, within five days after the resolution of the dispute. If Settling Defendant prevails concerning any aspect of the contested costs, Settling Defendant shall pay that portion of the costs (plus associated accrued interest) for which it did not prevail to EPA or the State, as applicable, within five days after the resolution of the dispute. Settling Defendant shall be disbursed any balance of the escrow account. All payments to EPA for Future Response Costs under this Paragraph shall be made in accordance with Paragraph 52.a (Instructions for Future Response Costs Payments to EPA and Stipulated Penalty Payments). The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Defendant's obligation to reimburse EPA and the State for Future Response Costs and State Future Response Costs, respectively.

54.     Interest.   In the event that any payment for Future Response Costs, TVA Costs, or State Future Response Costs required under this Section is not made by the date required, Settling Defendant shall pay Interest on the unpaid balance. The Interest to be paid shall begin to accrue on the date of the bill. The Interest shall accrue through the date of Settling Defendant's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 69.

# XVII. INDEMNIFICATION AND INSURANCE

55.    Settling Defendant's Indemnification of the United States and the State.

a.    The United States and the State do not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Defendant or Implementing Federal Agency as EPA's authorized representative under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).    Settling Defendant shall indemnify, save and hold harmless the United States, the State, and their officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on Settling Defendant's behalf or under its control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendant as EPA's authorized representative under Section 104(e) of CERCLA.    Further, Settling Defendant agrees to pay the United States and the State all costs they incur including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or the State based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on Settling Defendant's behalf or under its control, in carrying out activities pursuant to this Consent Decree.    Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this Consent Decree.    Neither Settling Defendant nor any such contractor shall be considered an agent of the United States or the State.

b.    The United States or the State, respectively, shall give Settling Defendant notice of any claim for which the United States or the State plans to seek indemnification pursuant to this Paragraph 55, and shall consult with Settling Defendant prior to settling such claim.

56.    Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.    In addition, Settling Defendant shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Settling Defendant's portion of the Work on or relating to OU 5 of the Site, including, but not limited to, claims on account of construction delays.

57.    No later than 15 days before commencing any on-site Work, Settling Defendant shall secure, and shall maintain until the first anniversary after its portion of the Remedial Action has been performed in accordance with this Consent Decree and the Performance Standards have been achieved, commercial general liability insurance with limits of one million dollars, for any

one occurrence, and automobile liability insurance with limits of one million dollars, combined single limit, naming the United States and the State as an additional insured with respect to all liability arising out of the activities performed by or on behalf of Settling Defendant pursuant to this Consent Decree.   In addition, for the duration of this Consent Decree, Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendant shall provide to EPA, TVA, and the State certificates of such insurance and a copy of each insurance policy. Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date.   If Settling Defendant demonstrates by evidence satisfactory to EPA, TVA, and the State that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor.

## XVIII.     FORCE MAJEURE

58.      "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of a Performing Party, of any entity controlled by a Performing Party, or of a Performing Party's contractors that delays or prevents the performance of any obligation under this Consent Decree despite the Performing Party's best efforts to fulfill the obligation.   The requirement that Performing Parties exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible.    "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

59.      If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which a Performing Party intends or may intend to assert a claim of force majeure, that Performing Party shall notify EPA's Project Coordinator orally or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region 4, within 7 days of when the Performing Party first knew that the event might cause a delay.   Within 7 days thereafter, the Performing Party shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Performing Party's rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of the Performing Party, such event may cause or contribute to an endangerment to public health or welfare, or the environment.   The Performing Party shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure.   The Performing Party shall be deemed to know of any circumstance of which the Performing Party, any entity controlled by the Performing Party, or

29

the Performing Party's contractors, knew or should have known.    Failure to comply with the above requirements regarding an event shall preclude the Performing Party from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 58 and whether the Performing Party has exercised its best efforts under Paragraph 58, EPA may, in its unreviewable discretion, excuse in writing the Performing Party's failure to submit timely notices under this Paragraph.

60.    If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations.    An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation.    If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify the Performing Party in writing of its decision.    If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay is attributable to a force majeure, EPA will notify the Performing Party in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

61.    If the Performing Party elects to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice.    In any such proceeding, the Performing Party shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that the Performing Party complied with the requirements of Paragraphs 58 and 59. If the Performing Party carries this burden, the delay at issue shall be deemed not to be a violation by the Performing Party of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX.  DISPUTE RESOLUTION

62.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree.    However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Defendant, and actions by EPA to enforce obligations of Implementing Federal Agency, that have not been disputed in accordance with this Section.

63.    Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.    The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by

written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

64. <u>Statements of Position</u>.

a. In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 10 days after the conclusion of the informal negotiation period, the applicable Performing Party invokes the formal dispute resolution procedures of this Section by serving on EPA and the State a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the Performing Party. The Statement of Position shall specify the Performing Party's position as to whether formal dispute resolution should proceed under Paragraph 65 (Record Review) or Paragraph 66.

b. Within 10 days after receipt of the Performing Party's Statement of Position, EPA will, and the State may, serve on the Performing Party its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon. Statements of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 65 (Record Review) or Paragraph 66. Within 10 days after receipt of EPA's Statement of Position, the Performing Party may submit a Reply.

c. If there is disagreement between EPA and the Performing Party as to whether dispute resolution should proceed under Paragraph 65 (Record Review) or Paragraph 66, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 65 and 66.

65. <u>Record Review</u>. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by a Performing Party regarding the validity of the ROD's provisions.

a. An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b. The Director of the Superfund Division, EPA Region 4, will issue a final administrative decision resolving the dispute based on the administrative record described in

Paragraph 65.a.   This decision shall be binding upon the Performing Party, subject only to the right to seek judicial review pursuant to Paragraphs 65.c and 65.d.

c.       In a dispute raised by Settling Defendant, any administrative decision made by EPA pursuant to Paragraph 65.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendant with the Court and served on all Parties within twenty (20) days after receipt of EPA's decision.   The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.   The United States may file a response to Settling Defendant's motion.

d.       In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law.   Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 65.a.

66.      Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.       Following receipt of the Performing Party's Statement of Position submitted pursuant to Paragraph 64.a, the Director of the Superfund Division, EPA Region 4, will issue a final decision resolving the dispute.   The Superfund Division Director's decision shall be binding on Implementing Federal Agency.   The Superfund Division Director's decision shall be binding on Settling Defendant unless, within fifteen (15) days after receipt of the decision, Settling Defendant files with the Court and serves on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.   The United States may file a response to Settling Defendant's motion.

b.       Notwithstanding Paragraph I.M (CERCLA Section 113(j) Record Review of ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

67.      The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of the Performing Parties not directly in dispute, unless EPA agrees or the Court orders otherwise.   Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 75.   Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.   In the event that Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties), unless EPA agrees or the Court orders otherwise.

# XX.  STIPULATED PENALTIES

68.    Settling Defendant shall be liable for stipulated penalties in the amounts set forth in Paragraphs 69 and 70 to the United States and the State for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure).   Stipulated penalties shall be paid 50% to the United States and 50% to the State, except that penalties incurred for failure to pay Future Response Costs or State Future Response Costs shall be paid to the applicable Plaintiff.   "Compliance" by Settling Defendant shall consist of completion of its portion of all payments and activities required under this Consent Decree, or any plan, report, or other deliverable approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans, reports, or other deliverables approved under this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

69.    <u>Stipulated Penalty Amounts - Work</u>.

a.    The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 69.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th day |
| $2,000 | 15th through 30th day |
| $2,500 | 31st day and beyond |

b.    <u>Compliance Milestones</u>.   The Compliance Milestones include both the timely and adequate submittal, as defined in Section XII (EPA Approval of Plans, Reports, and Other Deliverables), of and substantial compliance with the following documents and substantive requirements, as specified in the SOW and this Consent Decree.

(1)    Draft Monitored Natural Recovery Plan for Operable Unit 5;

(2)    Final Monitored Natural Recovery Plan for Operable Unit 5;

(3)    Payments for Future Response Costs, TVA Costs, or State Future Response Costs pursuant to Paragraphs 49, 50, or 51, respectively.

70.    <u>Stipulated Penalty Amounts</u>.   The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other written documents submitted by Settling Defendant pursuant to Section X (Reporting Requirements of Settling Defendant):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th day |
| $1,500 | 15th through 30th day |
| $3,000 | 31st day and beyond |

71.    In the event that EPA assumes performance of a portion or all of Settling Defendant's portion of the Work pursuant to Paragraph 84 (Work Takeover), Settling Defendant

shall be liable to EPA for a stipulated penalty in the amount of $1,408,877. Stipulated penalties under this Paragraph are in addition to the remedies available under Paragraphs 45 (Funding for Work Takeover) and 84 (Work Takeover).

72.     All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.    However, stipulated penalties shall not accrue:    (a) with respect to a deficient submission under Section XII (EPA Approval of Plans, Reports, and Other Deliverables), during the period, if any, beginning on the 31st day after EPA's or the State's receipt of such submission until the date that EPA or the State notifies Settling Defendant of any deficiency or (b) with respect to a decision by the Director of the Superfund Division, EPA Region 4, under Paragraph 65.b or 66.a of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendant's reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.    Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

73.     Following EPA's determination that Settling Defendant has failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendant written notification of the same and describe the noncompliance.    EPA and the State may send Settling Defendant a written demand for the payment of the penalties.    However, penalties shall accrue as provided in the preceding Paragraph regardless of whether Settling Defendant has been notified of a violation.

74.     All penalties accruing under this Section shall be due and payable to the United States and the State within 30 days after Settling Defendant's receipt from EPA of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XIX (Dispute Resolution) within the 30-day period.    All payments to the United States under this Section shall indicate that the payment is for stipulated penalties and shall be made in accordance with Paragraph 52.a (Instructions for Future Response Costs Payments to EPA and Stipulated Penalty Payments).    All payments to the State under this Section shall be made in accordance with Paragraph 52.c (Instructions for Payments to the State).

75.     Penalties shall continue to accrue as provided in Paragraph 72 during any dispute resolution period, but need not be paid until the following:

a.      If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to the United States and the State within 15 days after the agreement or the receipt of EPA's decision or order;

b.    If the dispute is appealed to this Court, and the United States prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed by Settling Defendant to the United States and the State within 60 days after receipt of the Court's decision or order, except as provided in Paragraph 75.c;

c.    If the District Court's decision is appealed by any Party, Settling Defendant shall pay all accrued penalties determined by the District Court to be owed by Settling Defendant to the United States and the State into an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order.   Penalties shall be paid into this account as they continue to accrue, at least every 60 days.   Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to the United States and the State or to Settling Defendant to the extent that it prevails.

76.    If Settling Defendant fails to pay stipulated penalties when due, Settling Defendant shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Defendant has timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 75 until the date of payment; and (b) if Settling Defendant fails to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 74 until the date of payment.   If Settling Defendant fails to pay stipulated penalties and Interest when due, the United States or the State, as appropriate, may institute proceedings to collect the penalties and Interest.

77.    The payment of penalties and Interest, if any, shall not alter in any way Settling Defendant's obligation to complete the performance of its portion of the Work required under this Consent Decree.

78.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States (but not including TVA) or the State to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is collected pursuant to this Consent Decree.

79.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.  COVENANTS BY PLAINTIFFS

80.    <u>Covenants for Settling Defendant by United States</u>.   In consideration of the actions that will be performed and the payments that will be made by Settling Defendant under this Consent Decree, and except as specifically provided in Paragraph 82 (Reservation of Rights by the United States) of this Section, the United States covenants not to sue or to take

administrative action against Settling Defendant pursuant to Sections 106, 107(a), and 113 of CERCLA, 42 U.S.C. §§ 9606, 9607(a) and 9613, for Settling Defendant's portion of the Work, Future Response Costs, and TVA Costs. In addition, Implementing Federal Agency covenants not to sue or to take administrative action against Settling Defendant with respect to any and all liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments. These covenants shall take effect upon the Effective Date of this Consent Decree. These covenants are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree. These covenants extend only to Settling Defendant; and to Settling Defendant's prior affiliate CanadianOxy Offshore Production Company (COOPCO), formerly known as Cities Service Company; and do not extend to any other person.

81. <u>Covenant for Implementing Federal Agency by EPA</u>. In consideration of the actions that will be taken by Implementing Federal Agency under this Consent Decree, and except as specifically provided in Paragraph 83 (Reservation of Rights by EPA and federal natural resource trustees), EPA covenants not to take administrative action against Implementing Federal Agency pursuant to Sections 106 and 107(a) of CERCLA for Implementing Federal Agency's portion of the Work and Future Response Costs. EPA's covenant shall take effect upon the Effective Date of this Consent Decree. EPA's covenant is conditioned upon the satisfactory performance by TVA of its obligations under this Consent Decree. EPA's covenant extends only to TVA and does not extend to any other person.

82. <u>Reservation of Rights by the United States</u>. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within their covenants and Paragraph 94. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant, with respect to:

        a.      liability for failure by Settling Defendant to meet a requirement of this Consent Decree;

        b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of OU 5 of the Site;

        c.      liability based on the ownership or operation of the Site by Settling Defendant when such ownership or operation commences after signature of this Consent Decree by Settling Defendant;

        d.      liability based on a Settling Defendant's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Defendant;

        e.      except as otherwise provided in Paragraph 80, liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

        f.      criminal liability;

36

g.      liability for violations of federal or state law that occur during or after implementation of the Work;

h.      liability, prior to achievement of Performance Standards in accordance with Paragraph 11.d by Settling Defendant, for additional response actions that EPA determines are necessary to achieve or maintain Performance Standards for Settling Defendant's portion of the Work or to carry out or maintain the effectiveness of its portion of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 13 (Modification of SOW or Related Work Plans);

i.      liability for operable units at the Site other than OU 5;

j.      liability for costs that the United States has incurred and will incur regarding the Site but that are not within the definition of Future Response Costs or TVA Costs; and

k.      liability for costs incurred or to be incurred by the Agency for Toxic Substances and Disease Registry regarding the Site.

83.     <u>Reservation of Rights by EPA and federal natural resource trustees</u>.     EPA and the federal natural resource trustees reserve, and this Consent Decree is without prejudice to, all rights against Implementing Federal Agency, with respect to all matters not expressly included within their covenants.     Notwithstanding any other provision of this Consent Decree, EPA and the federal natural resource trustees reserve, and this Consent Decree is without prejudice to, all rights against the Implementing Federal Agency, with respect to:

a.      liability for failure by Implementing Federal Agency to meet a requirement of this Consent Decree;

b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of OU 5 of the Site;

c.      liability based on the ownership or operation of the Site by Implementing Federal Agency when such ownership or operation commences after signature of this Consent Decree by Implementing Federal Agency;

d.       liability based on Implementing Federal Agency's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Implementing Federal Agency;

e.      except as otherwise provided in Paragraph 81, liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

f.      criminal liability;

g.      liability for violations of federal or state law that occur during or after implementation of the Work;

h.      liability, prior to achievement of Performance Standards in accordance with Paragraph 12.b by Implementing Federal Agency, for additional response actions that EPA determines are necessary to achieve or maintain Performance Standards for Implementing Federal Agency's portion of the Work or to carry out or maintain the effectiveness of its portion of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 13 (Modification of SOW or Related Work Plans);

i.      liability for operable units at the Site other than OU 5;

j.      liability for costs that the United States has incurred and will incur regarding the Site but that are not within the definition of Future Response Costs or TVA Costs; and

k.      liability for costs incurred or to be incurred by the Agency for Toxic Substances and Disease Registry regarding the Site.

84.      <u>Work Takeover</u>.

a.      In the event EPA determines that Settling Defendant has (1) ceased implementation of any portion of the Work, or (2) is seriously or repeatedly deficient or late in its performance of its portion of the Work, or (3) is implementing its portion of the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Defendant.   Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendant a period of ten days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.      If, after expiration of the ten-day notice period specified in Paragraph 84.a, Settling Defendant has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover").   EPA will notify Settling Defendant in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 84.b.   Funding of Work Takeover costs is addressed under Paragraph 45.

c.      Settling Defendant may invoke the procedures set forth in Paragraph 65 (Record Review) to dispute EPA's implementation of a Work Takeover under Paragraph 84.b. However, notwithstanding Settling Defendant's invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 84.b until the earlier of (1) the date that Settling Defendant remedies, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with Paragraph 65 (Record Review) requiring EPA to terminate such Work Takeover.

85.      Notwithstanding any other provision of this Consent Decree, the United States and the State retain all authority and reserve all rights to take any and all response actions authorized by law.

86.    Covenants by State.    In consideration of (1) the actions that will be performed by Settling Defendant and Implementing Federal Agency and (2) the payments that will be made by Settling Defendant under this Consent Decree, and except as specifically provided in Paragraph 87 (General Reservation of Rights by the State) of this Section, the State covenants not to sue or to take administrative action against Settling Defendant and Implementing Federal Agency pursuant to CERCLA or Sections 68-212-206 and 207 of the Tennessee Hazardous Waste Management Act of 1983, T.C.A. §§68-212-206 and 207, for the Work and State Future Response Costs.    In addition, the State covenants not to sue or to take administrative action against Settling Defendant and Implementing Federal Agency with respect to any and all liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any related natural resource damage assessments, except as specifically reserved in Paragraph 87.k. These covenants shall take effect as to Settling Defendant and Implementing Federal Agency upon the Effective Date of this Consent Decree.    These covenants as to Settling Defendant and Implementing Federal Agency are conditioned upon the satisfactory performance by each Performing Party of its respective obligations under this Consent Decree.    These covenants extend only to TVA; Settling Defendant; and to Settling Defendant's prior affiliate CanadianOxy Offshore Production Company (COOPCO), formerly known as Cities Service Company; and do not extend to any other person.

87.    General Reservation of Rights by the State.    The State reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant and Implementing Federal Agency, with respect to all matters not expressly included within their covenants. Notwithstanding any other provision of this Consent Decree, the State reserves all rights against Settling Defendant, and Implementing Federal Agency, with respect to:

a.    liability for failure by Settling Defendant or Implementing Federal Agency to meet a requirement of this Consent Decree;

b.    liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of OU 5 of the Site;

c.    liability based on the ownership or operation of real property within OU 5 of the Site by a Performing Party when such ownership or operation commences after signature of this Consent Decree by such Performing Party;

d.    liability based on a Performing Party's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with OU 5 of the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by such Performing Party;

e.    criminal liability;

f.    liability for violations of federal or state law that occur during or after implementation of the Work; and

g.    liability, prior to achievement of Performance Standards in accordance with Paragraph 12.b for Implementing Federal Agency, for additional response actions that EPA or the State determines are necessary to achieve and maintain Performance Standards for

Implementing Federal Agency's portion of the Work or to carry out and maintain the effectiveness of its portion of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 13 (Modification of SOW or Related Work Plans);

      h.     liability, prior to achievement of Performance Standards in accordance with Paragraph 11.d for Settling Defendant, for additional response actions that EPA or the State determines are necessary to achieve and maintain Performance Standards for Settling Defendant's portion of the Work or to carry out and maintain the effectiveness of its portion of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 13 (Modification of SOW or Related Work Plans);

      i.     liability for operable units at the Site other than OU 5;

      j.     liability for costs that the State has incurred or will incur regarding the Site but that are not within the definition of State Future Response Costs, including costs incurred or to be incurred by the Tennessee Department of Health; and

      k.     with respect to Implementing Federal Agency only, the following liabilities resulting from failure to comply with the terms of the Consent Decree: (1) damages for injury to, destruction of, or loss of natural resources, and (2) for the costs of any related natural resource damage assessments.

## XXII. COVENANTS BY SETTLING DEFENDANT AND IMPLEMENTING FEDERAL AGENCY

88.    <u>Covenants by Settling Defendant</u>.    Subject to the reservations in Paragraph 91, Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States, including TVA, or the State with respect to the Work, Future Response Costs, TVA Costs, State Future Response Costs and this Consent Decree, including, but not limited to:

      a.     any direct or indirect claim for reimbursement from the Hazardous Substance Superfund through CERCLA Sections 106(b)(2), 107, 111, 112 or 113, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

      b.     any claims under CERCLA Sections 107 or 113, 42 U.S.C. § 9607 or 9613, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Work, Future Response Costs, TVA Costs, State Future Response Costs and this Consent Decree; or

      c.     any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tennessee Constitution, the Tucker Act, 28 U.S.C. §1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law.

89.    <u>Covenant by Implementing Federal Agency</u>.    Implementing Federal Agency agrees not to assert any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to Internal Revenue Code 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, or 113, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612 or 9613, or any other provision of law with respect to the Work, Future Response Costs, TVA Costs, and

this Consent Decree.   This covenant does not preclude demand for reimbursement from the Superfund of costs incurred by Implementing Federal Agency in the performance of its duties (other than pursuant to this Consent Decree) as lead or support agency under the National Contingency Plan (40 C.F.R. Part 300).   Implementing Federal Agency shall save and hold harmless the State and its officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Implementing Federal Agency, its employees, agents, contractors, subcontractors, and any persons acting on Implementing Federal Agency's behalf or under its control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Implementing Federal Agency as EPA's authorized representative under Section 104(e) of CERCLA.

90.     Except as provided in Paragraph 99 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States, EPA, or the State brings a cause of action or issues an order pursuant to any of the reservations in Section XXI (Covenants by Plaintiffs), other than in Paragraphs 82.a, 83.a (claims for failure to meet a requirement of the Decree), 82.f, 83.f (criminal liability), 82.g and 83.g (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Defendant's or Implementing Federal Agency's claims arise from the same response action, response costs, or damages that the United States, EPA, or the State is seeking pursuant to the applicable reservation.

91.     <u>Reservation of Rights by Settling Defendant</u>.   Settling Defendant reserves, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.   However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendant's plans, reports, other deliverables or activities.

92.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

93.     Settling Defendant agrees not to seek judicial review of the final rule listing the Site on the NPL based on a claim that changed site conditions that resulted from the performance of the Work in any way affected the basis for listing the Site.

94.     Notwithstanding the other provisions of this Consent Decree, Implementing Federal Agency, for itself and its direct or indirect parent(s), subsidiaries, affiliates, predecessors, shareholders, officers, directors, members, managers, partners, employees, agents,

representatives, attorneys, successors and assigns, as the case may be, releases, acquits, and forever discharges Settling Defendant and COOPCO, and any of its direct or indirect parent companies, subsidiaries, affiliates, predecessors, successors, assigns, agents, representatives, attorneys, members, managers, partners, employees, directors and officers, from any and all Claims resulting from the operations, maintenance or conditions of the River's three dams known on the Effective Date as Ocoee No. 1, Ocoee No. 2 and Ocoee No. 3 and their related equipment.   If any section of this Consent Decree shall be found to be void, unenforceable or terminable by any court, governmental body, arbitration or other judicial body, such finding shall not be construed to render any of this Paragraph 94 either void or unenforceable and the obligations of this Paragraph shall remain in full force and effect to the fullest extent permitted.

## XXIII.        EFFECT OF SETTLEMENT; CONTRIBUTION

95.        Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.   Each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.   Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

96.        The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially approved settlement pursuant to which Settling Defendant and Implementing Federal Agency each has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Consent Decree.   The "matters addressed" in this Consent Decree are (i) the Work, (ii) Future Response Costs, (iii) TVA Costs, (iv) State Future Response Costs, and (v) (1) for Settling Defendant, any and all claims by TVA and the State against such Settling Defendant for damages for injury to, destruction of, or loss of natural resources, and for the costs of any related natural resource damage assessments at the Site; and (2) for Implementing Federal Agency, any and all claims by the State against such Implementing Federal Agency for damages for injury to, destruction of, or loss of natural resources, and for the costs of any related natural resource damage assessments, except as specifically reserved in Paragraph 87.k. Settling Defendant's prior affiliate COOPCO, formerly known as Cities Service Company, is also entitled to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided for by law, for "matters addressed" in this Consent Decree.

97.        Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States and the State in writing no later than 60 days prior to the initiation of such suit or claim.

98.     Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States and the State within ten days after service of the complaint on Settling Defendant.   In addition, Settling Defendant shall notify the United States and the State within ten days after service or receipt of any Motion for Summary Judgment and within ten days after receipt of any order from a court setting a case for trial.

99.     Res Judicata and Other Defenses.   In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant (and, with respect to a State action, Implementing Federal Agency) shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants by Plaintiffs).

# XXIV.     ACCESS TO INFORMATION

100.     Settling Defendant and Implementing Federal Agency shall provide to EPA and the State, upon request, copies of the last draft or final version of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to Work-related activities at OU 5 or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Work.   Settling Defendant and Implementing Federal Agency shall also make available, upon request, to EPA and the State, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

101.     Business Confidential and Privileged Documents.

        a.     A Performing Party may assert business confidentiality claims covering part or all of the Records submitted to EPA and the State under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).   Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.   If no claim of confidentiality accompanies Records when they are submitted to EPA and the State, or if EPA has notified the Performing Party that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to the Performing Party.

        b.     A Performing Party may assert that certain Records are privileged under the attorney-client privilege or any other privilege or protection recognized by federal law.   If a Performing Party asserts such a privilege or protection in lieu of providing Records, it shall

provide EPA and the State with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege or protection asserted by the Performing Party. If a claim of privilege or protection applies only to a portion of a Record, the Record shall be provided to EPA in redacted form to mask the privileged or protected portion only. The Performing Party shall retain all Records that it claims to be privileged or protected until EPA has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in the Performing Party's favor.

c.      No Records created or generated pursuant to the requirements of this Consent Decree shall be withheld from EPA or the State on the grounds that they are privileged or confidential.

d.      TVA may withhold Critical Infrastructure Information, as that term is defined in 6 C.F.R. 29.2. TVA must comply with subparagraph b. of this Paragraph with respect to any such Critical Infrastructure Information.

102.    Except for data that constitutes Critical Infrastructure Information, no claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around OU 5 of the Site.

## XXV. RETENTION OF RECORDS

103.    Until ten years after Settling Defendant's receipt of EPA's notification pursuant to Paragraph 47.b (Completion of the Work), Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to OU 5 of the Site, provided, however, that it must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to OU 5 of the Site. Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above, all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the performance of the Work, provided, however, that Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

104.    The United States acknowledges that Implementing Federal Agency (a) is subject to all applicable Federal record retention laws, regulations, and policies; and (b) has certified that it has fully complied with any and all EPA and State requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927 and Tennessee Code Annotated Section 10-7-501 et seq.

105.    At the conclusion of this record retention period, Settling Defendant shall notify DOJ, EPA, and the State at least 90 days prior to the destruction of any such Records, and, upon request by DOJ, EPA, or the State, Settling Defendant shall deliver any such Records to EPA or the State.   Settling Defendant may assert that certain Records are privileged or protected under the attorney-client privilege or any other privilege or protection recognized by federal law.   If Settling Defendant asserts such a privilege or protection, it shall provide DOJ, EPA, and the State with the following: (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege or protection asserted by Settling Defendant.   If a claim of privilege or protection applies only to a portion of a Record, the Record shall be provided to DOJ or EPA in redacted form to mask the privileged or protected portion only.   Settling Defendant shall retain all Records that it claims to be privileged or protected until DOJ or EPA has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in the Settling Defendant's favor.   However, no Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged, protected, or confidential.

106.    Settling Defendant certifies that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since the earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA and State requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

## XXVI.      NOTICES AND SUBMISSIONS

107.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.   All notices and submissions shall be considered effective upon receipt, unless otherwise provided.   Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, Implementing Federal Agency, the State, and Settling Defendant, respectively.   Notices required to be sent to EPA, and not to the United States, under the terms of this Consent Decree should not be sent to the U.S. Department of Justice. Except as otherwise provided, notice to a Party by email (if that option is provided below or by regular mail in accordance with this Section satisfies any notice requirement of the Consent Decree regarding such Party.

As to the United States:                    EES Case Management Unit
                                            U.S. Department of Justice
                                            Environment and Natural Resources Division

P.O. Box 7611
Washington, D.C.   20044-7611
Eescdcopy.enrd@usdoj.gov
Re: DJ # 90-11-3-10404

As to EPA:                      Franklin E. Hill
                                Director, Superfund Division
                                United States Environmental Protection
                                Agency
                                Region 4
                                Atlanta Federal Center
                                61 Forsyth Street
                                Atlanta, Georgia 30303-8960
                                hill.franklin@epa.gov

        and:                    Craig Zeller
                                EPA Project Coordinator
                                United States Environmental Protection
                                Agency
                                Region 4
                                Atlanta Federal Center
                                61 Forsyth Street
                                Atlanta, Georgia 30303-8960
                                zeller.craig@epa.gov

As to the Regional Financial     Paula V. Painter
Management Officer:              Superfund Enforcement & Information
                                Management Branch
                                US Environmental Protection Agency
                                Region 4
                                61 Forsyth Street, SW
                                Atlanta, GA 30303-8960
                                Painter.paula@epa.gov

As to Implementing Federal      Mike Stiefel
Agency:                         Tennessee Valley Authority
                                Water Permitting, Compliance, and
                                Monitoring
                                1101 Market Street, BR 4A
                                Chattanooga, TN 37402
                                mbstiefel@tva.gov

46

| As to the State: | Andy Binford |
|---|---|
| | Director of Remediation |
| | Tennessee Department of Environment and |
| | Conservation |
| | William R. Snodgrass TN Tower, 14th Floor |
| | 312 Rosa L. Parks Avenue |
| | Nashville, TN 37243 |

As to the State:

Andy Binford
Director of Remediation
Tennessee Department of Environment and
Conservation
William R. Snodgrass TN Tower, 14th Floor
312 Rosa L. Parks Avenue
Nashville, TN 37243

As to Settling Defendant:

Rick Passmore
Settling Defendant's Project Coordinator
5005 LBJ Freeway, Ste. 1350
Dallas, TX 75244
Rick_Passmore@oxy.com

and:

Frank A. Parigi
Vice President and General Counsel
5005 LBJ Freeway, Ste. 1350
Dallas, TX 75244
Frank_Parigi@oxy.com

## XXVII. RETENTION OF JURISDICTION

108.    This Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution).

## XXVIII. APPENDICES

109.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Site.

"Appendix D" is a map of OU 5.

"Appendix E" is the draft form of Proprietary Controls.

"Appendix F" is the performance guarantee.

# XXIX.    COMMUNITY INVOLVEMENT

110.    If requested by EPA or the State, Settling Defendant shall participate in community involvement activities pursuant to the community involvement plan to be developed by EPA.    After consulting with Settling Defendant, EPA will determine the appropriate role for Settling Defendant under the community involvement plan.    Settling Defendant shall also cooperate with EPA and the State in providing information regarding the Work to the public. As requested by EPA or the State, Settling Defendant shall participate in the preparation of such information for dissemination to the public and in public meetings that may be held or sponsored by EPA or the State to explain activities at or relating to the Site.

111.    The Parties anticipate that, pursuant to Paragraph 109 of the Operable Unit 3 Consent Decree, Settling Defendant will continue its existing Technical Assistance Plan (TAP) arrangement with the Ducktown Basin Museum.    If that TAP is terminated prior to EPA's issuance of a Notice of Completion of the Work pursuant to Paragraph 47.b of this Consent Decree, and upon request by EPA, Settling Defendant shall provide another TAP for the Site with a different qualified community group in accordance with the provisions set forth in the SOW.

112.    Costs incurred by the United States (except for TVA) under this Section, including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C. § 9617(e), shall be considered Future Response Costs that Settling Defendant shall pay pursuant to Section XVI (Payments for Response Costs).

# XXX. MODIFICATION

113.    Except as provided in Paragraph 13 (Modification of SOW or Related Work Plans), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States, including TVA, the State, and Settling Defendant, and shall be effective upon approval by the Court.    Except as provided in Paragraph 13, non-material modifications to this Consent Decree, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Settling Defendant.    All modifications to the Consent Decree, other than the SOW, also shall be signed by the State, or a duly authorized representative of the State, as appropriate.    A modification to the SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii).    Before providing its approval to any modification to the SOW, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.

114.    Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

# XXXI.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

115.    This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42

48

U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States (except for TVA) reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

116. If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party, and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXII. SIGNATORIES/SERVICE

117. Each undersigned representative of Settling Defendant to this Consent Decree, and the Assistant Attorney General of the Environment and Natural Resources Division of the Department of Justice, and the Deputy Attorney General for the State, and the Vice President, Safety, River Management & Environment for Implementing Federal Agency certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

118. Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States (except for TVA) has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

119. Settling Defendant shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree. Settling Defendant agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. Settling Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXXIII. FINAL JUDGMENT

120. This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

121.    Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and Settling Defendant.    The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.


SO ORDERED THIS 11th DAY OF AUGUST, 2016.


/s/ Curtis L. Collier
_____

United States District Judge

50

Signature Page for Consent Decree regarding Operable Unit 5 at the Copper Basin Mining District Superfund Site

FOR THE UNITED STATES OF AMERICA

_____
Date

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

4/22/2016
Date

SHEILA McANANEY
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.   20044-7611

51

Signature Page for Consent Decree regarding Operable Unit 5 at the Copper Basin
Mining District Superfund Site

3/17/16
Date

FRANKLIN E. HILL
Director, Superfund Division
U.S. Environmental Protection Agency
Atlanta Federal Center
61 Forsyth Street
Atlanta, Georgia 30303-8960

3/31/16
Date

BILAL M. HARRIS
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 4
Atlanta Federal Center
61 Forsyth Street
Atlanta, Georgia 30303-8960

52

Signature Page for Consent Decree regarding Operable Unit 5 at the Copper Basin Mining District Superfund Site

**FOR THE STATE OF TENNESSEE**

2-4-16

Date

ELIZABETH P. MCCARTER
Senior Counsel
Tennessee Attorney General's Office
Environmental Division
P.O. Box 20207
Nashville, TN 37202

2/4/16

Date

E. JOSEPH SANDERS
General Counsel
Tennessee Department of Environment and
    Conservation
William R. Snodgrass TN Tower, 2nd Floor
312 Rosa L. Parks Avenue
Nashville, TN 37243

Signature Page for Consent Decree regarding Operable Unit 5 at the Copper Basin Mining District Superfund Site

**FOR TENNESSEE VALLEY AUTHORITY**

1/14/2016
_____
Date

_____
JOHN MCCORMICK
Vice President
Safety, River Management & Environment
Tennessee Valley Authority
1101 Market Street
Chattanooga, Tennessee 37402,

54

Signature Page for Consent Decree regarding Operable Unit 5 at the Copper Basin Mining District Superfund Site

**FOR OXY USA INC., and on behalf of Glenn Springs Holdings, Inc.**

1/11/2016
Date

MICHAEL G. ANDERSON
Vice President
5005 LBJ Freeway, Ste. 1350
Dallas, TX   75244

Agent Authorized to Accept
Service on Behalf of Above-signed
Party for Purposes of this Consent
Decree:

~~Stephen E. Fitzgerald~~
~~SK Environmental Counsel~~
~~5005 LBJ Freeway, Ste. 1350~~
~~Dallas, TX   75244~~
~~972-687-7515~~
~~Stephen Fitzgerald@oxy.com~~

Frank A. Parigi
Vice President and General Counsel
Glenn Springs Holdings, Inc.
5005 LBJ Freeway, Suite 1350
Dallas, Texas 75244
Tel.: (972) 687-7503
email: frank_parigi@oxy.com

55